Milligan, J.,
delivered the opinion of the court:
On the 26th of May, 1869, the claimant entered into a written contract with Brigadier-General M. R. Morgan, commissary *273 of subsistence, United States Army, “to furnish, weigh, and issue at Camp Supply, Indian Territory, or such other post as may be established in the northern part of the Indian Territory, on the Arapaho and Cheyenne reservation, on the order of the acting commissary of subsistence at that post, fresh beef of a good and marketable quality, in equal proportions of fore and hind quarter meat, (necks, shanks, and kidney-tallow to be excluded,) in such quantities as may be from time to time required, and on such days as shall be designated by the commanding officer.”
The contract further provides, that the claimant “ shall also furnish and deliver to the acting commissary of subsistence, at the post mentioned, on the order of such acting commissary of subsistence, beef-cattle on the hoof, (all steers, between four and six years of age, in good, healthy condition, average weight one thousand pounds, and none received under eight hundred pounds,) in such numbers and at such time as may be required.” * * * * *
This contract was to run for a period of twelve months, from the 1st of July, 1869, to the 30th of June, 1870, or for such less time as the Commissary-General of Subsistence shall direct; and the claimant was to receive seven cents and four mills for the fresh beef delivered and accepted, and the same for beef-cattle per pound, net weight.
In case of failure on the part of the claimant to fulfill the stipulations of the contract, the acting commissary was authorized to supply the deficiency, holding the claimant liable for all such damages or loss as might be sustained by the United States.
On the 13th of July, 1869, Bvt. Brig. Gen. Morgan entered into another contract with one D. W. Powers for the delivery of beef-cattle on the hoof) the substance of which is as follows :
The first section provides, “that the said D. M. Powers aforesaid, his heirs, executors, or administrators, shall furnish and deliver to the acting commissary of subsistence for Indians, United States Army, at such points on the Arapaho and Cheyenne reservation, Indian Territory, as may be designated by the Subsistence Department, one thousand and four hundred head of beef-cattle, all steers, in good, healthy condition, to be weighed when delivered, in the presence of the acting commissary of subsistence for Indians, who is the inspector of these *274 cattle, and to average at least one thousand pounds gross, each; the above number of cattle to be delivered in such numbers and at such times as the acting commissary of subsistence for Indians may require, the delivery to commence not later than August the 20th.
“ Second. * * * * Provided, That the party of the first part may require the said D. W. Powers aforesaid to increase the number (1,400) of head of beef-cattle contracted for 25 per cent, or less.”
Powers was to receive payment for the cattle delivered and accepted under his contract at the rate of two and three-tenth mills per pound, gross weight.
By the terms of this agreement it was to remain in force for a period not longer than one year from its date; and the proof shows that from the 30th of September, 1869, to the 1st of June, 1870, there were one thousand six hundred and twenty-nine head of cattle delivered under it, which is the foundation of this action.
The claimant insists that under his contract of the 26th of May, 1869, he was justly entitled to furnish all the fresh beef and beef-cattle on the hoof which might be required at the post for the time his contract was in force. On the other hand, it is contended by the defendants that his contract is limited to the supplies required by the Army proper, and cannot, therefore, be construed to include supplies for the Indians, for which •the Powers contract was expressly made.
The breach, if any has been committed, of the first contract grows out of the fulfillment of the second, for it is clear, if the • claimant’s contract conferred on him the right to furnish all the beef required to supply both the Army and the Indians, the •Government could neither withhold that right or transfer it to another without violating their obligation to him.
But this contract, as well as all others made by subaltern ■ officers, must be construed in the light of the authority under which such officer acted. The act of Congress approved March 2, 1861, (12 Stat. L., p. 220, § 10,) confers the authority on the commissary to purchase army supplies, and the officer in letting this- contract appears to have strictly pursued its provisions. •In response to the advertisement, which was “ for supplying net beef from the block to the troops and others” supplied at that ipost, the claimant presented his bid, as shown in the find *275 ings of the court, which was accepted and the contract closed.
It cannot be doubted that the acting commissary, when he entered into the contract under consideration, had no original power derived from the statutes or the Regulations of the Army, which, by usage, have the force of law, to contract for Indian supplies. The act of Congress under which this contract was made not only does not confer any such power on the commissary, but he is expressly forbidden to exercise it by the Army Regulations.
Paragraph 1202, Revised Army Regulations of 1863, provides : “ Whenever subsistence can be spared from the military supplies, the commanding officer is authorized to allow its issue,' in small quantities, to Indians visiting military posts on the frontier or in their respective nations. The return for this issue shall be made, signed by the Indian agent, (when there is one present,) and approved by the commanding officer of the post or station.
“ 1203. Regular daily or periodical issues of subsistence to Indians, or issues of subsistence in bulle to Indian agents for the use of Indians, are forbidden.”
It being settled that under the ordinary powers of the commissary he could not bind the Government in contract to supply the Indians, the next inquiry is, whether or not he was clothed with any such extraordinary power to do so at the time the Ryan contract was entered into.
In answering this question it seems unnecessary to resort to the internal evidence, found on the face of the instrument itself, as to the intent and meaning of the contracting parties, but it will be entirely sufficient to place the decision on the want of authority in the commissary to bind the United States, at the date of the claimant’s contract, for Indian supplies.
The “Act mailing appropriations for the current and contingent expenses of the Indian Department,” approved April 10,1869, (16 Stat. L., p. 40, § 4,) appropriates $2,000,000 to enable the President to maintain the peace among the Indian tribes, promote their civilization, and bring them, when practicable, on reservations, relieve their necessities, &c. In order to enable the President to execute the powers conferred upon him by this act, he is authorized to appoint a board of commissioners, who may, under his direction, exercise joint control with the Secre *276 tary of the Interior over the disbursement of the appropriations made by this act, or any part thereof that the President may designate.
Subsequently, under an arrangement between the Interior and War Departments, it was determined that the Indians on the Arapaho and Cheyenne reservations were to be subsisted through the instrumentality of the Subsistence Department, and to be paid for out of the $2,000,000 appropriated for that service.
This resolution of the Government was made on the 20th of May, 1869, and thereafter, on the 22d, the Commissary-General of Subsistence informed General Clarke, acting connnissary-general in the military division of the Missouri, headquarters at Chicago, in which Camp Supply was situated, that the Subsistence Department would furnish the Indians on the reservations with supplies, under the order of tbe Government. He further informed General Clarke that he could not then give him specific and detailed instructions respecting this service, but would furnish them at an early date.
On the 26th of May, 1889, the day on which claimant's contract bears date, General Baton, the Commissary-General, forwarded to General Clarke, at Chicago, the detailed instructions which he had promised; and it was not until the 28th of May, 1869, that Clarke officially informed General Morgan, his subaltern, that the Subsistence Department was charged with the duty of furnishing supplies to the Indians on the reservations.
It is plain, therefore, that at the date of Byan’s contract General Morgan had no lawful authority to contract for Indian supplies, and, as a consequence, Powers’ contract worked no breach of the claimant’s for which the Government is answerable in damages. Byan has had the full benefit of his own agreement, and has been paid for all he did under it, and be cannot now be heard to complain of the Powers contract, which was for another and a different service.
The petition is dismissed.